UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

STEPHANIE SMITH a/k/a )
STEPHANIE LOGSDON )
 )
and )
 )
BRIDGETT PARSON, )
 )
and )
 )
CAMMIE MUSINSKI, )
 )
       Plaintiffs. )   CIVIL ACTION NO. 3:19-CV-721-CHB
 )
v. )   **ELECTRONICALLY FILED**
 )
RONALD R. TYLER, )
 )
SERVE:   Ronald R. Tyler )
          568 Steven Drive )
          Shepherdsville, KY 40165 )
 )
and )
 )
PHIL McHARGUE, )
 )
SERVE:   Phil McHargue )
          185 White Oak Way )
          Lebanon Junction, KY 40150 )
 )
and )
 )
JONATHAN G. HALL, )
 )
SERVE:   Jonathan G. Hall )
          1746 Galbraith Rd. )
          Frankfort, KY 40601 )
 )
and )
 )
KENTUCKY DEPARTMENT OF )
CORRECTIONS )
 )

SERVE:  Attorney General Andy Beshear  )
        Commonwealth of Kentucky       )
        700 Capitol Ave., STE 118      )
        Frankfort, KY 40601            )
                                       )
                                       )
        Defendants.                    )
        ────────────────────────────  )

## **AMENDED COMPLAINT**

Come Plaintiffs Stephanie Smith a/k/a Stephanie Logsdon, Cammie Musinski, and Bridgett Parson in their Complaint against Defendants Kentucky Department of Corrections, Jonathan G. Hall, Phil McHargue and Ronald R. Tyler (collectively, "Defendants", plead as follows:

## **INTRODUCTION**

This case stems from the abject failure by Defendant Kentucky Department of Corrections ("KYDOC"), through its Division of Probation and Parole ("DPP"), to comply with United States and Kentucky law, honor its mission, follow its own official written policies and procedures, and to adequately screen, train and supervise KYDOC employees. At its heart, this case is about: (1) the official *de facto* policy of KYDOC providing for the opportunity, the blind-eye, and the concealment of sexual harassment and sexual abuse within KYDOC operations; and (2) the actions and inactions of Defendants violating the substantive due process rights of Plaintiffs by subjecting them to sexual abuse and other violations of their bodily integrity.

Defendant KYDOC's Division of Probation and Parole's mission is "to enhance public safety and promote offender reintegration in the community through proactive supervision and referral to community-based services." Defendant KYDOC through DPP is responsible for supervising offenders while on probation or parole and to assist those

citizens with reintegration in the community. Defendant KYDOC's culture is such that sexual abuse and harassment is rampant throughout the agency—*both against female employees and offenders*. This has become the official *de facto* policy and known practice/behavior of Defendant KYDOC. This official *de facto* policy and known practice/behavior of Defendant KYDOC is such that sexual abuse and harassment is tolerated, covered-up, and concealed throughout the agency at the highest levels, including the final policy making authority, Director of DPP, Defendant Jonathan Hall ("Hall"). Defendant Hall not only refused to report, but concealed known allegations of sexual harassment and abuse. As the Director of DPP, he intentionally and with forethought acted to prevent exculpatory evidence of Defendant Ron Tyler's ("Tyler") conduct from being presented in official court proceedings.

In this case, KYDOC, its Director, its supervisor(s), and its employee(s) set-up, allowed, and then concealed the fact Defendant Tyler repeatedly sexually assaulted and abused non-violent female charges under his supervision and control. Defendant Tyler preyed upon these vulnerable women by threatening both incarceration and further bodily harm if they reported his conduct. Utilizing the power and authority granted to him as a KYDOC Probation and Parole Officer, Defendant Tyler wielded the power of the state as both a sword to force Plaintiffs to succumb to his sexual abuse and as a shield to prevent Plaintiffs from later coming forward either criminally or civilly.

Defendant Tyler's supervisor, Defendant Ron McHargue ("McHargue"), knew or should have known of Defendant Tyler's sexual abuse of his charges. Defendant McHargue failed to take proactive or reactive action to investigate and/or prevent Defendant Tyler's sexual abuse and the attendant KYDOC cover-up and concealment.

Defendant Tyler's highest-ranking supervisor and DPP's final policy making authority, Defendant Hall, personally received numerous complaints of sexual misconduct. Yet Hall failed to take any action, other than to proactively cover-up these complaints when they were brought to his attention. By failing to act, covering-up, and concealing numerous complaints of sexual misconduct against Defendant Tyler, Defendant KYDOC—through Defendant Hall—acted in accordance with its *de facto* policy and known practice/behavior of turning a blind eye to the sexual harassment and abuse of its employees and offenders. This resulted in Defendant Tyler's continued sexual harassment and abuse reoccurring after Defendant KYDOC should have begun investigating him and—*at a minimum*—placed him on leave.

Defendant KYDOC should have and could have prevented Defendant Tyler's sexual abuse of Plaintiffs in this case through reasonable oversight of Defendant Tyler, but it failed to do so.

Plaintiffs bring this case seeking compensatory damages under 42 U.S.C. § 1983 and state law against Defendants stemming from: (1) Defendant Tyler's conduct; (2) Defendant KYDOC's  official *de facto* policies and known practice/behavior; and (3) Defendants KYDOC, Hall and McHargue's failure to screen, train, and/or supervise Defendant Tyler as well as their failure to take action when they knew or should have known of Defendant Tyler's sexual abuse. Plaintiffs also seek punitive damages to further legitimate interests in punishing unlawful conduct and deterring future unlawful conduct by the Defendants as well as deterring others from similar unlawful conduct.

## JURISDICTION AND VENUE

1.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, which provides for original jurisdiction over cases presenting questions of federal law under 42 U.S.C. § 1983.

2.      Jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. § 1367, which provides supplemental jurisdiction over state law claims so related to federal law claims that one case or controversy exists for Article III purposes.

3.      Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

4.      Plaintiffs hereby restate and incorporate the allegations contained in the INTRODUCTION and paragraphs 1-3, as if fully stated herein.

5.      Defendant Tyler was a probation and parole officer who, at all relevant times, was employed by the Commonwealth of Kentucky Department of Corrections ("KYDOC"). Defendant Tyler is a citizen of Bullitt County Kentucky.

6.      Defendant McHargue is a supervising probation officer employed by KYDOC, and was, at all relevant times, a supervisor of Defendant Tyler. Defendant McHargue is a citizen of Bullitt County Kentucky.

7.      Defendant Hall was the Kentucky Probation and Parole Director, the final policy making authority overseeing all Probation and Parole Officers, and employed by KYDOC, at all relevant times. Defendant Hall is a citizen of Franklin County Kentucky.

8.      Defendant KYDOC is a state government agency in the Commonwealth of Kentucky, operating under the Kentucky Department of Justice and employing more than eight employees. Therefore, federal and state civil rights laws and regulations are applicable to all Plaintiffs herein.

9.      Plaintiff Stephanie Smith a/k/a Stephanie Logsdon ("Smith") is a citizen of Jefferson County Kentucky, and was, at all relevant times, under the supervision of Probation and Parole Officer Defendant Tyler.

10.     Plaintiff Bridgett Parson ("Parson") is a citizen of Jefferson County Kentucky, and was, at all relevant times, under the supervision of Probation and Parole Officer Defendant Tyler.

11.     Plaintiff Cammie Musinski ("Musinski") is a citizen of Bullitt County, Kentucky, and was, at all relevant times, under the supervision of Probation and Parole Officer Defendant Tyler.

## GENERAL ALLEGATIONS

12.     Plaintiffs hereby restate and incorporate the allegations contained in the INTRODUCTION and paragraphs 1-11, as if fully stated herein.

13.     Defendant KYDOC has a long and recent history of issues related to sexual assault and/or sexual harassment of both its employees and the members of the general public. This history of predatory misconduct is so egregious that there have been over 120 reports of sexual harassment filed by employees against Defendant KYDOC, and at least a $1.6 million judgment against KYDOC, for employee-to-employee sexual assault and sexual harassment.[1]

14.     This long history has resulted in a "boys club" culture of sexual assault and sexual harassment to fester within Defendant KYDOC. Despite the Personnel Cabinet's Office of Diversity, Equality, and Training Executive Director Christopher Johnson's statement that KYDOC employees are "trained to be especially sensitive to any potential

---

[1] *Please see* Attachment One, *Kentucky's Female Corrections Officers Say Sexual Harassment Is Part Of the Job.*

incidents of harassment,"[2] on March 25, 2019, Defendant Hall—*while acting in his official capacity as the Director of Probation and Parole and its the final policy making authority*—was terminated for concealing and refusing to initiate or request multiple investigations into Defendant Tyler's "misconduct involving several women while in his probation and parole position," and allowing Defendant Tyler to continue supervising offenders even after multiple offenses of sexual assault had been brought to his attention, which by Defendant Hall's own admission "may have lead to others being victimized."[3]

15.     Kentucky Justice and Public Safety Cabinet spokesman Mike Wynn indicated that mishandling allegations of sexual assault within DPP was such a part of the history of KYDOC, that "while former leadership at the Department of Corrections may have tolerated this type of negligence and misconduct, the Justice Cabinet finds it unacceptable and is taking decisive steps to root it out."[4] All of the aforementioned took place while Defendant KYDOC publicized that it "continued the tradition of industry 'best practices' by seeking [and obtaining] *reaccreditation*" through the American Correctional Association.

16.     This Complaint alleges damages under 42 U.S.C. § 1983 and state law against Defendants Tyler, McHargue, Hall, and KYDOC, stemming from Defendant Tyler's sexual harassment, sexual assault, sexual abuse, tortious conduct, intentional infliction of emotional distress of Plaintiffs Smith, Parson, and Musinski, while they were supervised by Defendant Tyler.

---

[2] *Id.*
[3] *Please see* Attachment Two, *Justice and Public Safety Cabinet's Redacted Termination Letter Jonathan G. Hall.*
[4] *Please see* Attachment Three, *State Probation and Parole Director Fired, In Latest Corrections Shake-up.*

17.     From at least June 2017 through at least March 2019, Defendant Tyler abused the official powers vested in KYDOC Probation and Parole Officers via both violation of bodily integrity *and* direct and indirect threats of retaliation, force, bodily harm and injury, incarceration, and cruel and unusual punishment against Plaintiffs Smith, Parson, and Musinski, therefore violating their rights under the United States Constitution and Kentucky law to be free from such treatment.

18.     Plaintiffs Smith, Parson, and Musinski allege that Defendants Tyler, McHargue, and/or Hall acted negligently, recklessly or wantonly, and within the course and scope of their employment/official capacity, or, in the alternative, that they acted intentionally within the course and scope of their employment/official capacity, thereby violating Plaintiffs Smith's, Parson's, and Musinski's rights protected by Kentucky law and by the United States Constitution.

19.     Plaintiffs Smith, Parson, and Musinski allege that Defendants Tyler, McHargue, and/or Hall acted negligently, recklessly or wantonly, and within their individual capacities, or, in the alternative, that they acted intentionally, and within their individual capacities, thereby violating Plaintiffs Smith's, Parson's, and Musinski's rights protected by Kentucky law and by the United States Constitution.

20.     Plaintiffs Smith, Parson, and Musinski allege that Defendant KYDOC was deliberately indifferent to the need to screen, train, and/or supervise Defendants Tyler, McGargue, and/or Hall. This deliberate indifference directly resulted in Defendants Perry's, McHargue's, and Hall's improper treatment of Plaintiffs Smith, Parson, and Musinski, and others under Defendant Tyler's supervision.

21.     That due to the actions/inactions of Defendants KYDOC, Hall, McHargue, and Tyler, Plaintiffs Smith, Parson, and Musinski are entitled to compensatory and punitive damages against Defendants.

22.     That due to the actions/inactions of Defendants KYDOC, Hall, McHargue, and Tyler, Plaintiffs Smith, Parson, and Musinski are entitled to attorneys' fees, costs, and expenses.

## FACTUAL ALLEGATIONS

23.     Plaintiffs hereby restate and incorporate the allegations contained in the INTRODUCTION and paragraphs 1-22, as if fully stated herein.

### Plaintiff Stephanie Smith

24.     On or about May 6, 2015 Plaintiff Smith pled guilty to a non-violent crime of the sort that plagues communities across Kentucky. On May 7, 2015, she was granted entry to Drug Court.

25.     In or about April 2017, Plaintiff Smith was placed on probation and came under the supervision of Defendant KYDOC's Bullitt County Probation and Parole Office.

26.     Beginning in or about June 2017, Plaintiff Smith was placed under Defendant Tyler's supervision when he became her probation and parole officer.

27.     Almost immediately after being placed under the supervision of Defendant Tyler, Plaintiff Smith was forced to engage in non-consensual sexual acts with him. On one of her first "check-in" visits with him, Defendant Tyler threw Plaintiff Smith against his office wall with such force that other probation and parole officers within the office must have realized that something was not right. He then forcibly kissed and groped her.

28.     In the weeks and months that followed, these non-consensual sexual acts elevated from kissing and groping to sodomy and rape. Defendant Tyler's non-

consensual, sexual acts against Plaintiff Smith constituted sexual assault. This sexual abuse continued through October 2017.

29.     Defendant Tyler's sexual abuse of Plaintiff Smith occurred at the Bullitt County Probation and Parole office located at 207 South Mulberry Street, Elizabethtown, Kentucky 42704, as well as other locations in and around Bullitt County, Kentucky, *including a hotel room at the EconoLodge off of Brooks Hill Road, which Defendant Tyler—while armed and with his badge—procured solely for the purpose of raping Plaintiff Smith.*

30.     Defendant Tyler was acting within the course and scope of his employment when these acts of sexual abuse occurred. Defendant Tyler used the authority granted to him by his employer KYDOC, and was armed with his weapon, when he repeatedly forced Plaintiff Smith's participation in non-consensual sexual acts.

31.     Defendant Tyler threatened to falsify Plaintiff Smith's urine samples (*e.g.*, he told her that "he knew how to make her urine dirty"), and otherwise threatened to arrest her and have her sent to prison if she either denied his repeated acts of sexual abuse or reported him for his actions. Furthermore, Defendant Tyler told Plaintiff Smith that no one would believe her if she reported him, and there were many ways he could have her probation revoked.

32.     After Plaintiff Smith's period of supervision under Defendant Tyler ended, he continued to both explicitly and implicitly threaten to use his power as a KYDOC Probation and Parole Officer to cause Plaintiff Smith to be sent to prison, if she reported his sexual abuse of her. Although no longer under his supervision, Defendant Tyler continued to tell Plaintiff Smith, "I'm still YOUR officer."

33. Defendant Tyler routinely carried his firearm and badge, including when he sexually abused Plaintiff Smith. Plaintiff Smith feared for her life if she either refused or reported Defendant Tyler's sexual abuse.

34. Upon information and belief, Defendant Tyler's sexual abuse of Plaintiff Smith was widely known throughout the Bullitt County Probation and Parole Office, with other probation officers referring to Plaintiff Smith as Defendant Tyler's "girlfriend."

35. Upon information and belief, Defendant McHargue knew or should have known of Defendant Tyler's sexual abuse of and misconduct towards Plaintiff Smith.

36. Upon information and belief, Defendant McHargue failed to adequately supervise Defendant Tyler and prevent him from sexually abusing Plaintiff Smith.

37. Upon information and belief, the systematic abuse perpetuated by Defendant Tyler could have, and should have, been prevented by his KYDOC probation and parole supervisor, Defendant McHargue.

38. In or about November 2017, Defendant Tyler stopped being Plaintiff Smith's probation and parole officer. Plaintiff Smith's new probation officer, Samantha Stevens, referred to Plaintiff Smith as Defendant Tyler's "girlfriend," and even commented to Defendant Tyler, "I guess you told your girlfriend she's getting locked-up today."

39. Even after Defendant Tyler was no longer Plaintiff Smith's probation and parole officer, he continued to harass her, including repeatedly texting her and constantly visiting her place of employment for hours at a time, while cloaked in the superior position of authority and the color of Kentucky law via his badge and firearm and otherwise on duty.

40.     Plaintiff Smith was afraid of Defendant Tyler and afraid that he would use his authority as a probation and parole officer to have her revoked and sent to prison. This fear continued even after Defendant Tyler was no longer her assigned probation and parole officer, as he continued to be employed as a probation officer at the Bullitt County Probation and Parole Office where Plaintiff Smith continued to be supervised.

41.     Defendant Tyler continued to be employed at the Bullitt County Probation and Parole Office, and Plaintiff Smith continued to cross paths with him at the office and in court.

42.     In or about February 2018, Plaintiff Smith's probation was revoked for a positive drug urine test and she was incarcerated.

43.     In or about August 2018, a female offender filed a sexual harassment complaint against Defendant Tyler. Defendant Hall received notice of this sexual harassment complaint against Defendant Tyler. Instead of reporting this sexual harassment complaint as required, Defendant Hall concealed both his knowledge of the complaint and the existence of the complaint. The concealment of this received report of sexual harassment against a female parolee, by Defendant Tyler, was one of the grounds for Defendant Hall's firing.

44.     In or about September 2018, Defendant Hall was made aware of at least one sexual harassment and assault complaint by a female parolee against Defendant Tyler. This female offender absconded for fear of being raped by Defendant Tyler. Defendant Hall failed to request an official investigation into the allegations against Defendant Tyler, and then participated in a cover-up of any allegations of sexual harassment and assault by Defendant Tyler, as against this female offender. Defendant Hall's cover-up and concealment was of such nature that Defendant Hall demanded the exclusion of an

exculpatory recording of Defendant Tyler's statements against interest from an official court proceeding. Excluding Defendant Tyler's statements against interest would have detrimentally affected the rights of an offender who feared for her personal safety *and* acted to protect Defendant Tyler, Defendant McHargue, Defendant Hall, and KYDOC. When Defendant Hall learned that the recording of Defendant Tyler's statements against interest were played at the official court proceeding, Defendant Hall became irate that his demand for the exclusion of exculpatory evidence was not followed. Defendant Hall never reported this sexual harassment and abuse complaint, Defendant Tyler's statements against interest, or Defendant Tyler's conduct for an official investigation. Defendant Hall's concealment and cover-up of this sexual harassment and abuse was one of the grounds for Defendant Hall's firing.

45.     In or about October 2018, the Division of Probation and Parole conducted an internal investigation related to Defendant Tyler's misconduct, including sexual assault and abuse of female parolees under his supervision.

46.     In or about October 2018, the Department of Corrections finally placed Defendant Tyler on administrative leave.

47.     In or about November 2018, the Kentucky State Police began an investigation of Defendant Tyler's misconduct, including claims of sexual assault and sexual abuse.

48.     In or about January 2019, Plaintiff Smith was paroled from prison. Once again, she was put under the supervision of the Bullitt County Probation and Parole Office. At this time, Defendant McHargue, who was Defendant Tyler's supervisor, became Plaintiff Smith's parole officer. Defendant McHargue's office was right next door to Defendant Tyler's office. When Plaintiff Smith first reported to Defendant McHargue,

Plaintiff Smith was forced to walk by Defendant Tyler's office, view his still present name plate, and was reminded of the repeated threats and assaults he had made against her.

49.     While she provided information concerning Defendant Tyler's sexual abuse to the Kentucky State Police in late 2018, it was not until Defendant Tyler was fired, stripped of his powers, and arrested in March 2019 that Plaintiff Smith felt safe to come forward publicly with her account of Defendant Tyler's history of sexual abuse. Until Defendant Tyler was officially terminated from KYDOC as a probation and parole officer and was formally charged with the crimes he committed against her, Plaintiff Smith feared retribution from Defendant Tyler and/or his supervisory staff, including Defendant McHargue, or other probation and parole officers.

50.     On March 25, 2019, Defendant Hall was fired with cause as the Director of the Department of Correction's Division of Probation and Parole for violating 101 KAR 1:345, Section 1, unsatisfactory performance of job duties; violation of CPP 3.22, Staff Sexual Offenses and CPP 14.7, Sexual Abuse Prevention. The letter notifying Defendant Hall of his termination cited violations for his concealing and mishandling numerous reported complaints against Defendant Tyler for sexual assault and abuse against offender under his supervision.[5]

51.     On or about March 28, 2019, Defendant Tyler was arrested and charged with rape, sodomy, sexual abuse, tampering with physical evidence, harassment, and official misconduct. These charges related to women, including Plaintiff Smith, whom he supervised in his position as a probation and parole officer.

---

[5] *Please see* Fn.3, *supra*.

52.     In or about March 2019, Plaintiff Smith was admitted to Trilogy Health Services for drug rehabilitation. While admitted to Trilogy Health Services, Plaintiff Smith was treated for depression, anxiety, and other emotional and mental health issues caused by the actions and inactions of Defendant Tyler, Defendant McHargue, Defendant Hall, and Defendant KYDOC.

53.     On April 10, 2019, Defendant Tyler was indicted for four felonies and two misdemeanors, including rape through the use of forcible compulsion and sodomy through the use of forcible compulsion of Plaintiff Smith. Defendant Tyler was also charged with sexual abuse, tampering with physical evidence, and official conduct related to at least two other women.[6]

54.     Upon information and belief, after Defendant Hall's firing and Defendant Tyler's firing, Defendant McHargue remained with the Bullitt County Office Probation and Parole Office, with no change in status or pay.

55.     Plaintiff Smith successfully completed her Trilogy Health Services treatment on September 29, 2019. To this day Plaintiff Smith continues her treatment for depression, anxiety, and other emotional and mental health issues caused by the actions and inactions of Defendant Tyler, Defendant McHargue, Defendant Hall, and Defendant KYDOC.

56.     While Defendant Tyler's physical sexual abuse against Plaintiff Smith ended in October 2017, his emotional and physical intimidation continued until he was fired, arrested, and indicted on numerous felony charges in March/April 2019. Defendant Tyler obstructed Plaintiff Smith's prosecution of this action via direct and indirect threats of

---

[6] *Please see* Attachment Four, *Commonwealth of Kentucky, Bullitt Circuit Court, Criminal Division, 19-CR-00147: Commonwealth of Kentucky vs. Ronald R. Tyler.*

retaliation, force, bodily harm and injury, incarceration, and cruel and unusual punishment. Until Defendant Tyler was arrested, jailed, and indicted, Plaintiff Smith feared for her personal health and safety in coming forward publicly with her accounts of Defendant Tyler's sexual abuse and tortious conduct against her.

<u>Plaintiff Cammie R. Musinski</u>

57.     In 2017, Plaintiff Musinski was charged with food stamp fraud after her ex-husband had applied for similar benefits to those she was already receiving resulting in an overpayment of benefits to her. Without benefit of legal counsel, Plaintiff Musinski agreed to a guilty plea which allowed her to make monthly restitution repayments of the overpayment of food stamp benefits, with the understanding that she would not have to serve time in jail.

58.     In 2017, Plaintiff Musinski was placed on probation and came under the supervision of Defendant KYDOC's Bullitt County Probation and Parole Office. Plaintiff Musinski was placed under Defendant Tyler's supervision when he became her probation and parole officer.

59.     At their initial meeting Defendant Tyler seemed helpful, recommending apartments for Plaintiff Musinski as she was looking for more favorable housing. At the conclusion of that meeting, however, Defendant Tyler hugged Plaintiff Musinski without her consent.

60.      In the weeks and months that followed, these non-consensual acts elevated from hugging and touching to groping and rape. Defendant Tyler's non-consensual, sexual acts against Plaintiff Musinski constituted sexual assault. This sexual assault continued through October 2018.

61.     Defendant Tyler followed Plaintiff Musinski and incessantly texted and called Plaintiff Musinski at all times of the day.

62.     Defendant Tyler's sexual abuse of Plaintiff Musinski occurred at the Bullitt County Probation and Parole office located at 207 South Mulberry Street, Elizabethtown, Kentucky 42704, as well as other locations in and around Bullitt County, Kentucky.

63.     Defendant Tyler routinely carried a firearm, including when he sexually abused Plaintiff Musinski. Plaintiff Musinski feared for her life if she either refused or reported Defendant Tyler's sexual abuse.

64.     Defendant Tyler was acting within the course and scope of his employment when these acts of sexual abuse against Plaintiff Musinski occurred. Defendant Tyler used the authority granted to him by his employer Defendant KYDOC, and was armed with his weapon, when he repeatedly sexually assaulted Plaintiff Musinski.

65.     Upon information and belief, Defendant McHargue knew or should have known of Defendant Tyler's sexual abuse of and misconduct towards Plaintiff Musinski.

66.     Upon information and belief, Defendant McHargue failed to adequately supervise Defendant Tyler and prevent him from sexually abusing Plaintiff Musinski.

67.     Upon information and belief, the systematic abuse perpetuated by Defendant Tyler against Plaintiff Musinski could have, and should have, been prevented by his KYDOC probation and parole supervisor, Defendant McHargue.

68.     In or about August 2018, a female parolee filed a sexual harassment complaint against Defendant Tyler. Defendant Hall received notice of this sexual harassment complaint against Defendant Tyler. Instead of reporting this sexual harassment complaint as required, Defendant Hall concealed both his knowledge of the complaint and the existence of the complaint. The concealment of this received report of

sexual harassment against a female parolee, by Defendant Tyler, was one of the grounds for Defendant Hall's firing.

69.    In or about September 2018, Defendant Hall was made aware of at least one sexual harassment and assault complaint by a female parolee against Defendant Tyler. Defendant Hall's concealment and cover-up of this sexual harassment and abuse was one of the grounds for Defendant Hall's firing.

70.    If Defendant Hall had taken appropriate action and initiated an investigation of Defendant Tyler when he learned of the sexual harassment complaints against him, Defendant Tyler would have been placed on administrative leave earlier and the October 2018 rape of Plaintiff Musinski would not have occurred.

71.    To this day Plaintiff Musinski has been, and continues to be, treated for depression, anxiety, and other emotional and mental health issues caused by the actions and inactions of Defendant Tyler, Defendant McHargue, Defendant Hall, and Defendant KYDOC.

<u>Plaintiff Bridgett Parson</u>

72.    Plaintiff Parson has struggled with drug addiction at various times in her life, culminating in felony convictions which led to her incarceration at various times between 2004 and 2014.

73.    In 2016, Plaintiff Parson was paroled and came under the supervision of Defendant KYDOC's Bullitt County Probation and Parole Office.

74.    Beginning in 2017, Plaintiff Parson was placed under Defendant Tyler's supervision when he became her probation and parole officer.

75.    Almost immediately after being placed under the supervision of Defendant Tyler, Plaintiff Parson was forced to engage in non-consensual sexual acts with him. On

one of her first visits to "check-in" with Defendant Tyler, he forcibly kissed her. In the weeks and months that followed, these non-consensual sexual acts elevated from hugging and kissing to groping. Defendant Tyler's non-consensual, sexual acts against Plaintiff Parson constituted sexual assault. This sexual assault continued through October 2018.

76.    Defendant Tyler followed Plaintiff Parson and incessantly texted and called Plaintiff Parson at all times of the day.

77.    Defendant Tyler threatened to drug test Plaintiff Parson and implied that he could falsify Plaintiff Smith's urine samples, and otherwise threatened to arrest her and have her sent to prison if she either denied his repeated acts of sexual abuse or reported him for his actions.

78.    Defendant Tyler's sexual abuse of Plaintiff Parson occurred at the Bullitt County Probation and Parole office located at 207 South Mulberry Street, Elizabethtown, Kentucky 42704, as well as other locations in and around Bullitt County, Kentucky.

79.    Defendant Tyler routinely carried a firearm, including when he sexually abused Plaintiff Parson. Plaintiff Parson feared for her life if she either refused or reported Defendant Tyler's sexual abuse.

80.    Defendant Tyler was acting within the course and scope of his employment when these acts of sexual abuse against Plaintiff Parson occurred. Defendant Tyler used the authority granted to him by his employer Defendant KYDOC, and was armed with his weapon and badge, when he repeatedly forced Plaintiff Parson participation in non-consensual sexual acts.

81.    Upon information and belief, Defendant McHargue knew or should have known of Defendant Tyler's sexual abuse of and misconduct towards Plaintiff Parson.

82.     Upon information and belief, Defendant McHargue failed to adequately supervise Defendant Tyler and prevent him from sexually abusing Plaintiff Parson.

83.     Upon information and belief, the systematic abuse perpetuated by Defendant Tyler against Plaintiff Parson could have, and should have, been prevented by his KYDOC probation and parole supervisor, Defendant McHargue.

84.     In or about August 2018, a female parolee filed a sexual harassment complaint against Defendant Tyler. Defendant Hall received notice of this sexual harassment complaint against Defendant Tyler. Instead of reporting this sexual harassment complaint as required, Defendant Hall concealed both his knowledge of the complaint and the existence of the complaint. The concealment of this received report of sexual harassment against a female parolee, by Defendant Tyler, was one of the grounds for Defendant Hall's firing.

85.     In or about September 2018, Defendant Hall was made aware of at least one sexual harassment and assault complaint by a female parolee against Defendant Tyler. Defendant Hall's concealment and cover-up of this sexual harassment and abuse was one of the grounds for Defendant Hall's firing.

86.     If Defendant Hall had taken appropriate action and initiated an investigation of Defendant Tyler when he learned of the sexual harassment complaints against Defendant Tyler, Defendant Tyler would have been placed on administrative leave earlier and would not have been able to sexually abuse Plaintiff Parson in September and October 2018.

87.     To this day Plaintiff Parson has been, and continues to be, treated for depression, anxiety, and other emotional and mental health issues caused by the actions

and inactions of Defendant Tyler, Defendant McHargue, Defendant Hall, and Defendant KYDOC.

<u>Defendant Ron Tyler, Defendant Phil McHargue, Defendant Jonathan Hall, and Defendant Kentucky Department of Corrections</u>

88.     Defendant KYDOC, through DPP, is responsible for the hiring, training, and supervision of probation and parole officers.

89.     Defendant KYDOC, through DPP, has the duty to provide properly screened, trained, and supervised Probation and Parole Officers to citizens sentenced to probation or granted parole by Kentucky courts. Furthermore, Defendant KYDOC has the duty to provide citizens on probation or parole with a reasonably safe environment in which to report to and be supervised by their probation and parole officers.

90.     Defendant KYDOC, through DPP, has the duty to provide adequate policies and procedures to citizens who wish to report abuse by their probation or parole officer to prevent the violation of rights guaranteed by federal and/or state law. Defendant KYDOC, through DPP, also has the duty to abide by and follow the aforementioned adequate policies and procedures.

91.     Probation and Parole Officers are responsible the enforcement of probated and paroled sentences in Kentucky. Probation and Parole Officers are law enforcement officers who act under the color of Kentucky law and as agents thereof. Acting under the color of Kentucky law, Probation and Parole Officers monitor, supervise, and detain citizens sentenced to probation or parole.

92.     Defendant Hall—*while acting in his official capacity as the Director of Probation and Parole*—acted as the final policy making authority for DPP.

93.     Defendant Hall, though his actions and inactions, made policy on behalf of DPP as to Defendant Tyler and Defendant Tyler's conduct.

94.     Defendant McHargue, as a DPP employed Probation and Parole Supervisor, has the duty to provide proper training, screening, supervision, oversight, administration, direction, control, and command of those he supervises, including Defendant Tyler during all times relevant to the facts, acts, and claims presented herein.

95.     Defendant Tyler is believed to have been hired by Defendant KYDOC as a Probation and Parole Officer in 2016. Defendant Tyler was a Probation and Parole Officer acting under the color of Kentucky law during all times relevant to the facts, acts, and claims presented herein.

96.     Defendant Tyler's sexual assaults of Plaintiffs Smith, Musinski, and Parson occurred between 2016 and October 2018.

97.     Defendant Tyler's obstruction of Plaintiffs bringing claims against him continued from 2016 until he was arrested, jailed, and indicted in April 2019.

98.     Defendant Tyler was acting within the course and scope of his employment during all times relevant to the facts, acts, and claims presented herein. Defendant Tyler utilized the authority and color of Kentucky law granted to him by Defendant KYDOC to force Plaintiffs Smith, Musinski, and Parson into wholly non-consensual sexual acts that constitute sexual assault and sexual harassment.

99.     No reasonable Probation and Parole Officer could have thought that sexually harassing, sexually assaulting, intimidating, and/or threatening citizens charged to his control was lawful.

100.    From information and belief, the systemic abuse perpetuated by Defendant Tyler could have and should have been prevented by his employer Defendant KYDOC, DPP Director Defendant Hall, and/or his supervisor Defendant McHargue.

101.    Defendant Tyler's actions were facilitated by Defendant Hall's actions and inactions related to the known complaints of sexual harassment and sexual assault against Defendant Tyler.

102.    Defendant Tyler's actions were facilitated by Defendant McHargue's failure to supervise him.

103.    Defendant Tyler's actions were facilitated by Defendant KYDOC's failure to screen, train, and supervise him.

104.    For the reasons stated, Plaintiffs Smith, Musinski, Parson allege that Defendant McHargue failed to satisfy these duties listed herein.

105.    For the reasons stated, Plaintiffs Smith, Musinski, and Parson allege that Defendant Hall failed to satisfy these duties listed herein.

106.    For the reasons stated, Plaintiffs Smith, Musinski, and Parson allege that Defendant KYDOC failed to satisfy these duties listed herein.

107.    For the reasons stated, Plaintiffs Smith, Musinski, and Parson allege that but for the failures of Defendant KYDOC, Defendant Hall, and Defendant McHargue sexual assaults by Defendant Tyler should have, and would have, been prevented.

108.    Defendant KYDOC's failure to have in place and in enforce appropriate policies and procedures, its failure to ensure that citizens such as Plaintiffs Smith, Musinski, and Parson were made aware of same, its failure to allow for the safe reporting of such incidents, actions, and inactions perpetuated by its own employees and agents constitutes wanton disregard and deliberate indifference to the rights and safety of

citizens provided under the U.S. Constitution and Kentucky law and entitles Plaintiffs Smith, Musinski, and Parson to recover damages, including punitive damages, from Defendants KYDOC, Hall, McHargue, and Tyler.

**COUNT I**
**UNCONSTITUTIONAL SEARCH AND SEIZURE**

109.    Plaintiffs hereby restate and incorporate the allegations contained in the INTRODUCTION and paragraphs 1–108, as if fully stated herein.

110.    Defendant Tyler's detention of Plaintiff Smith, both in the Bullitt County Probation and Parole Office and around Bullitt County, to sexually assault and abuse her constitutes excessive and unreasonable search and seizure under the Fourth Amendment of the United States Constitution.

111.    Defendant Tyler's detention of Plaintiff Musinski, both in the Bullitt County Probation and Parole Office and around Bullitt County, to sexually assault and abuse her constitutes excessive and unreasonable search and seizure under the Fourth Amendment of the United States Constitution.

112.    Defendant Tyler's detention of Plaintiff Parson, both in the Bullitt County Probation and Parole Office and around Bullitt County, to sexually assault and abuse her constitutes excessive and unreasonable search and seizure under the Fourth Amendment of the United States Constitution.

113.    Defendant Tyler, acting as the employee and agent of Defendant KYDOC, and acting under the authority and supervision of Defendant Hall and Defendant McHargue, deprived Plaintiffs Smith, Musinski, and Parson of rights secured by the Fourth Amendment to the United States Constitution.

114.    As a result of these acts, Plaintiffs Smith, Musinski, and Parson incurred

injuries and damages and are entitled to recover compensatory and punitive damages from Defendants KYDOC, Hall, McHargue in an amount to be determined by a jury.

**COUNT II**
**UNCONSTITUTIONAL CRUEL AND UNUSUAL PUNISHMENT**

115.    Plaintiffs hereby restate and incorporate the allegations contained in the INTRODUCTION and paragraphs 1–114, as if fully stated herein.

116.    Defendant Tyler's actions against Plaintiff Smith constitute cruel and unusual punishment and violate the Eighth Amendment of the United States Constitution.

117.    Defendant Tyler's actions against Plaintiff Musinski constitute cruel and unusual punishment and violate the Eighth Amendment of the United States Constitution.

118.    Defendant Tyler's actions against Plaintiff Parson constitute cruel and unusual punishment and violate the Eighth Amendment of the United States Constitution.

119.    Defendant Tyler, acting as the employee and agent of Defendant KYDOC, and acting under the authority and supervision of Defendant Hall and Defendant McHargue, deprived Plaintiffs Smith, Musinski, and Parson of rights secured by the Eighth Amendment to the United States Constitution.

120.    As a result of these acts, Plaintiffs Smith, Musinski, and Parson incurred injuries and damages and are entitled to recover compensatory and punitive damages from Defendants KYDOC, Hall, McHargue in an amount to be determined by a jury.

**COUNT III**
**UNCONSTITUTIONAL VIOLATION OF THE DUE PROCESS CLAUSE**

121.    Plaintiffs hereby restate and incorporate the allegations contained in the

INTRODUCTION and paragraphs 1–120, as if fully stated herein.

122.    Defendant Tyler's sexual assault and sexual abuse of Plaintiff Smith, both in the Bullitt County Probation and Parole Office and around Bullitt County, constitutes an excessive and unreasonable violation of the freedom from sexual abuse under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

123.    Defendant Tyler's sexual assault and sexual abuse of Plaintiff Musinski, both in the Bullitt County Probation and Parole Office and around Bullitt County, constitutes an excessive and unreasonable violation of the freedom from sexual abuse under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

124.    Defendant Tyler's sexual assault and sexual abuse of Plaintiff Parson, both in the Bullitt County Probation and Parole Office and around Bullitt County, constitutes an excessive and unreasonable violation of the freedom from sexual abuse under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

125.    Defendant Tyler, acting as the employee and agent of Defendant KYDOC, and acting under the authority and supervision of Defendant Hall and Defendant McHargue, deprived Plaintiffs Smith, Musinski, and Parson of rights secured by the Fourteenth Amendment to the United States Constitution.

126.    As a result of these acts, Plaintiffs Smith, Musinski, and Parson incurred injuries and damages and are entitled to recover compensatory and punitive damages from Defendants KYDOC, Hall, McHargue in an amount to be determined by a jury.

## COUNT IV
## TORTIOUS CONDUCT

127.    Plaintiffs hereby restate and incorporate the allegations contained in the

INTRODUCTION and paragraphs 1–126, as if fully stated herein.

128.   The actions of Defendant Hall constitute negligence, gross negligence, violation of the right to personal integrity and to be free from sexual assault and sexual abuse; and all other compensable torts, including, but not limited to the tort of outrage.

129.   The actions of Defendant Tyler constitute assault, battery to all plaintiff's (rape as to Musinski) and (rape and sodomy as to Smith), negligence, gross negligence, harassment, extortion, violation of the right to personal integrity and to be free from sexual assault and sexual abuse; and all other compensable torts, including, but not limited to the tort of outrage.

130.   Defendant Tyler was acting as the employee and agent of Defendant KYDOC, and acting under the authority and supervision of Defendant Hall and Defendant McHargue when the aforementioned tortious conduct was committed.

131.   As a result of these acts, Plaintiffs Smith, Musinski, and Parson incurred injuries and damages and are entitled to recover compensatory and punitive damages from Defendants KYDOC, Hall, McHargue in an amount to be determined by a jury.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

132.   Plaintiffs hereby restate and incorporate the allegations contained in the INTRODUCTION and paragraphs 1–131, as if fully stated herein.

133.   The actions of Defendants Hall, McHargue, and Tyler, acting as agents and employees of Defendant KYDOC, were intentional or reckless, outrageous and intolerable, and caused Plaintiffs Smith, Musinski, and Parson to suffer severe emotional distress.

134.   The action of Defendant KYDOC was intentional or reckless, outrageous

and intolerable, and caused Plaintiffs Smith, Musinski, and Parson to suffer severe emotional distress.

135.   As a result of the acts of Defendants KYDOC, Hall, McHargue, and Tyler, Plaintiffs Smith, Musinski, and Parson incurred injuries and damages and are entitled to compensatory and punitive damages arising from severe emotional distress, in an amount to be determined by a jury.

## COUNT VI
## INVASION OF PRIVACY

136.   Plaintiffs hereby restate and incorporate the allegations contained in the INTRODUCTION and paragraphs 1–135, as if fully stated herein.

137.   The actions of Defendants Hall, McHargue, and Tyler, acting as agents and employees of Defendant KYDOC, constituted an intentional invasion of Plaintiff Smith's, Musinski's, and Parson's privacy and intrusion upon their reasonable expectations of seclusion and were a substantial factor in causing their injuries.

138.   The action of Defendant KYDOC constituted an intentional invasion of Plaintiff Smith's, Musinski's, and Parson's privacy and intrusion upon their reasonable expectations of seclusion and was a substantial factor in causing their injuries.

139.   As a result of the acts of Defendants KYDOC, Hall, McHargue, and Tyler, Plaintiffs Smith, Musinski, and Parson incurred injuries and damages and are entitled to compensatory and punitive damages arising from invasion of their right to privacy, in an amount to be determined by a jury.

## COUNT VII
## VIOLATION OF PLAINTIFFS' FEDERAL CIVIL RIGHTS

140.   Plaintiffs hereby restate and incorporate the allegations contained in the INTRODUCTION and paragraphs 1–138, as if fully stated herein.

141.     Defendant KYDOC failed to take reasonable measures to prevent sexual assaults and sexual abuse by its employees and in its office(s) and in fact allowed sexual abuses and sexual assaults to be perpetrated in its office(s) and its supervision district by its employees and agents, thereby creating and allowing a sexually harassing and hostile environment for Plaintiffs Smith, Musinski, and Parson and similarly situated women, in violation of Constitutional statutes and provisions.

142.     Defendant KYDOC knew or should have known of the sexual abuse, sexual assaults, harassment, hostile, and discriminatory environment, as well as the embarrassment and humiliation to which Plaintiffs Smith, Musinski, and Parson, and other women, were subjected.

143.     Defendant KYDOC's failure to implement and enforce appropriate policies and procedures, properly train, screen and supervise its' agents and/or employees to prevent sexual abuse, intimidation, discrimination, sexual assaults and threats upon Plaintiffs Smith, Musinski, and Parson, and other women, constitutes a violation of the United States Constitution for which Defendant Hall, Defendant McHargue, and Defendant Terry are liable to Plaintiffs Smith, Musinski, and Parson for their injuries, compensatory and punitive damages, in an amount to be determined by a jury.

## COUNT VIII
## NEGLIGENT TRAINING AND RETENTION

144.     Plaintiffs hereby restate and incorporate the allegations contained in the INTRODUCTION and paragraphs 1–143, as if fully stated herein.

145.     Defendants KYDOC, Hall, and McHargue knew or should have known of the sexually assault and abuse allegations and the risk of danger created by Defendant Tyler and by that action, inaction, and/or omission caused harm to Plaintiffs Smith, Musinski,

and Parson.

146.    As a direct and proximate result of the negligence and/or failure of Defendants KYDOC, Hall, and McHargue to properly screen, train, supervise and/or otherwise oversee Defendant Tyler, Defendants KYDOC, Hall, and McHargue authorized and empowered Defendant Tyler to engage in the facts, acts, and claims listed herein. As a result, Plaintiffs Smith, Musinski, and Parson incurred injuries and damages and are entitled to recover compensatory and punitive damages from Defendants KYDOC, Hall, McHargue in an amount to be determined by a jury.

## COUNT IX
## VICARIOUS LIABILITY

147.    Plaintiffs hereby restate and incorporate the allegations contained in the INTRODUCTION and paragraphs 1–146, as if fully stated herein.

148.    The power and authority bestowed upon Defendant Tyler by Defendants KYDOC, Hall, and McHargue placed Defendant Tyler in a position of power over Plaintiffs Smith, Musinski, and Parson, and other women, and enabled him to perpetuate the wrongful acts described herein.

149.    Defendants KYDOC, Hall, and McHargue provided Defendant Tyler access to Plaintiffs Smith, Musinski, and Parson, and other women, as well as the location(s) where these acts described herein occurred.

150.    Defendants KYDOC, Hall, and McHargue failed to provide and enforce appropriate policies and procedures to allow Plaintiffs Smith, Musinski, and Parson, and other women, to promptly and safely report incidents of abuse. Such policies and procedures would have empowered Plaintiffs Smith, Musinski, and Parson, and other women, to prevent further misconduct and secured their rights guaranteed by federal and

state law.

151.     Defendants KYDOC, Hall, and McHargue were deliberately indifferent to
the need for Probation and Parole Officer training on appropriate interactions with clients
and thus failed to adequately screen, train and supervise Defendant Tyler, a dangerous
sexual predator who acted at the direction and with the approval of Defendants KYDOC,
Hall, and McHargue, thereby allowing Defendant Tyler access to, and control of, Plaintiffs
Smith, Musinski, and Parson, and other women.

152.     The acts and omissions of Defendants KYDOC, Hall, McHargue, and Tyler,
as described above, deprived Plaintiffs Smith, Musinski, and Parson of rights protected
by the United States Constitution and by Kentucky law, and were substantial factors in
causing Plaintiffs Smith, Musinski, and Parson to suffer pain, humiliation and emotional
distress.

153.     Defendants KYDOC, Hall, and McHargue are vicariously liable for
Defendant Tyler' negligent, reckless, willful, or wanton conduct because Defendant Tyler
was acting as their agent or employee and within the course and scope of his employment.

## COUNT X
## 42 U.S.C. § 1983 CLAIMS

154.     Plaintiffs hereby restate and incorporate the allegations contained in the
INTRODUCTION and paragraphs 1–153, as if fully stated herein.

155.     Defendants KYDOC, Hall, McHargue, and Tyler, individually or in concert
and/or together, committed acts under the color of Kentucky law as alleged above, which
deprived Plaintiffs Smith, Musinski , and Parson of their rights, privileges, and
immunities secured by the United States Constitution, or other applicable provisions of
the United States Constitution, or state law rights and privileges found in Kentucky's

Constitution and tort laws. Those deprivations included, but may not be limited to deliberate indifference to Plaintiffs' right to privacy, their right to personal integrity, their right to be free from unreasonable search and seizure, their right to be free from unwanted physical contact, their right to be free from unwanted intrusion upon their person(s), their right to be free from physical assault and battery, and their right to be free from unwanted sexual contact.

156.    In the case of Defendant Tyler, these violations were committed directly through one or more tortious acts as set forth above. In the case of Defendant KYDOC and Defendant Hall, individually and in its/his official capacity, these violations were committed on the basis of Defendant KYDOC's and Defendant Hall's failure to properly screen Defendant Tyler upon application to the DPP and/or on the basis of firsthand knowledge of Defendant Tyler's patently illegal conduct, which conduct was being conducted and remained ongoing while he was an acting Probation and Parole Officer. Defendant Hall in his official capacity and thus Defendant KYDOC, as a state agency, explicitly or implicitly authorized, approved or knowingly acquiesced to the clearly unconstitutional actions and conduct of employee Defendant Tyler, and acted with deliberate indifference to the rights of Plaintiffs Smith Musinski, and Parson, and the offending acts perpetrated against them by Defendant Tyler. Together or in the alternative, Defendants KYDOC, Hall, McHargue, and Tyler, individually and in their official capacities, committed various violations which were the result of a written or unwritten policy, custom or practice on the part of Defendant KYDOC which was the moving policy force behind and which resulted in Plaintiff Smith's, Musinski's, and Parson's constitutional injuries, including but not necessarily limited to a failure to adequately train, or adequately supervise Defendants Tyler, or investigate Defendant

Tyler on complaints made by offenders, and failure to report, remedy and prevent sexual assault and sexual abuse which amounted to deliberate, reckless or callous indifference by Defendant KYDOC and/or each of the supervisory Probation and Parole Officers individually.

157.   As a direct and proximate result of Defendants' violations of Plaintiffs' civil and Constitutional rights as stated above, Plaintiffs have suffered and incurred consequential, actual and compensatory damages.

158.   Defendants' violations of Plaintiffs' clearly established civil and Constitutional rights as stated above were a substantial factor in causing Plaintiffs to suffer great pain of body and mind, physical and mental injuries, lost wages or earnings, medical expenses, past and future, and the impairment of their ability to earn money in the future.

159.   Defendants acted intentionally, maliciously, or with reckless disregard or callous indifference to the rights of Plaintiffs and are liable for punitive damages.

160.   No reasonable governmental official could have believed his or her actions were lawful in light of clearly established law.

**DAMAGES**

**COMPENSATORY DAMAGES**

161.   Plaintiffs hereby restate and incorporate the allegations contained in the INTRODUCTION and paragraphs 1–160, as if fully stated herein.

162.   As a direct and proximate result of Defendants' conduct as described above, Plaintiffs have incurred or may incur medical and/or counseling expenses, suffered severe, permanent mental anguish and emotional distress, and will continue to incur such expenses and emotional injuries in the future, all to the damages of Plaintiffs.

163.    As a direct and proximate result of the conduct of Defendants as set forth herein above, Plaintiffs have incurred and will continue to incur the loss of the power to labor and earn, have incurred and will continue to incur expenses for psychological care, counseling, and treatment, all to the damages of Plaintiffs.

164.    As a direct and proximate result of the conduct of Defendants as set forth herein above, Plaintiffs have suffered and will continue to suffer significant pain and suffering. Defendants' conduct warrants an award of compensatory damages to Plaintiffs.

165.    The power and authority bestowed upon Defendant Tyler by Defendants KYDOC, Hall, and McHargue placed Defendant Tyler in a position of state granted power over Plaintiffs Smith, Musinski, and Parson, and other women, and enabled him to perpetuate the wrongful acts described herein.

166.    Defendants KYDOC, Hall, and McHargue are vicariously liable for the torts and constitutional violations committed by Defendant Tyler. This vicarious liability subjects Defendants KYDOC, Hall, and McHargue to an obligation to pay compensatory damages to Plaintiffs Smith, Musinski, and Parson.

## PUNITIVE DAMAGES

167.    Plaintiffs hereby restate and incorporate the allegations contained in the INTRODUCTION and paragraphs 1–166, as if fully stated herein.

168.    Defendants acted with oppression, fraud, malice, reckless, callous and/or flagrant indifference in relation to Plaintiffs.

169.    By acting with oppression, fraud, malice, reckless, callous and/or flagrant indifference in relation to Plaintiffs, Defendants caused irreparable harm to Plaintiffs for which punitive damages are appropriate (in relation to the above-referenced claims where

punitive damages are available).

170.   The power and authority bestowed upon Defendant Tyler by Defendants KYDOC, Hall, and McHargue placed Defendant Tyler in a position of state granted power over Plaintiffs Smith, Musinski, and Parson, and other women, and enabled him to perpetuate the wrongful acts described herein.

171.   Defendants KYDOC, Hall, and McHargue are vicariously liable for the torts and constitutional violations committed by Defendant Tyler. This vicarious liability subjects Defendants KYDOC, Hall, and McHargue to an obligation to pay punitive damages to Plaintiffs Smith, Musinski, and Parson.

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs Stephanie Smith a/k/a Stephanie Logsdon, Cammie Musinski, and Bridgett Parson demand judgment against all named Defendants, jointly and severally, in an amount to be determined by a jury for:

A.  A monetary judgment against Defendants in an amount that will fully compensate Plaintiffs for their injuries and damages;

B.  A judgment of appropriate punitive damages against Defendants, in an amount sufficient to punish Defendants for their willful, wanton, oppressive, fraudulent, malicious, callous and/or grossly negligent conduct;

C.  Their costs herein expended including reasonable attorneys' fees, pursuant to CR 3.02, CR 54.04, 42 U.S.C. § 1983, *et seq.*, and 42 U.S.C. § 1988, *et seq.*;

D.  An award of post-judgment interest in the amount allowed by statute;

E.  Trial by jury of all issues so triable;

F.  Their emotional distress, past, present, and future;

G.  Their humiliation, past, present, and future;

H.  Their embarrassment and mental anguish, past, present, and future;

I.   Back pay, lost wages, front pay, and/or impairment of power to earn money;

J.   Past and future medical expenses; and

K.  Their pain and suffering.

**WHEREFORE**, Plaintiffs Stephanie Smith a/k/a Stephanie Logsdon, Cammie Musinski, and Bridgett Parson demand judgment against the Defendants and the agents, employees, and/or servants of each Defendant, respectively, jointly and severally, for compensatory and punitive damages, their costs expended herein, including attorney's fees, trial by jury on all issues so triable; and any and all further legal and equitable relief to which they may appear entitled.

Respectfully submitted,

*/s/ John W. Byrnes*
John W. Byrnes
**BYRNES LAW OFFICE, PLLC**
4410 S. Third St.
Louisville, Kentucky 40214
Telephone:    (502) 364-2500
Facsimile:     (502) 384-9077
Emal: JWByrnes@Aol.com
*Counsel for Plaintiffs Smith, Parson, and Musinski*

Respectfully submitted,


/s/ Jeffrey Sexton
JEFFREY SEXTON
**PIRATA PLLC**
325 W. Main St. #150
Louisville, Kentucky 40202
Telephone:    (502) 893-3784
Email: JSexton@JeffSexton.com
*Counsel for Plaintiffs Smith, Parson, and Musinski*